# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICA'S KIDS, LLC, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-03520 |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | Hon. Virginia M. Kendall |
| Defendant. | ) | |

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF AMERICA'S KIDS, LLC'S COMPLAINT BY DEFENDANT ZURICH AMERICAN INSURANCE COMPANY**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................ 5

    I.    Plaintiff Has Not Stated, And Cannot State, A Claim For Breach Of Contract.............. 6

        A.    Loss Directly Or Indirectly Caused By A Virus Is Excluded. ........................... 7

        B.    America's Kids Cannot Allege Direct Physical Loss Or Damage. .................. 10

        C.    The Request For Civil Authority Coverage Fails For An Additional Reason: The Orders Were Not Issued In "Response" To Property Loss Or Damage ..... 13

    II.    America's Kids Has Not Stated A Claim Under N.Y. General Business Law § 349.... 15

    III.    America's Kids Cannot Allege "Bad Faith" As A Matter of Law................................ 17

    IV.    America's Kids' Declaratory-Judgment Claim Must Be Dismissed. .......................... 20

    V.    America's Kids' Complaint Should Be Dismissed With Prejudice............................ 21

CONCLUSION.......................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ...........................................................11, 14, 15

*Alexander v. Geico Ins. Co.*,
35 A.D.3d 989 (N.Y. App. Div. 2006) ...............................................................................20

*Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.*,
981 N.E.2d 1120 (Ill. App. Ct. 2012) ................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................5

*Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*,
197 F. Supp. 3d 616 (S.D.N.Y. 2016) ................................................................................18

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
11 N.E.3d 676 (N.Y. 2014) .................................................................................................19

*Bretton v. Mut. of Omaha Ins. Co.*,
110 A.D.2d 46 (N.Y. App. Div. 1985) .................................................................................6

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ................................................................................................15

*Certain Underwriters at Lloyd's, London Subscribing to Policy No.
W15F03160301 v. Houligan's Pub & Club, Inc.*,
2019 WL 5611557 (Fla. Cir. Ct. Oct. 24, 2019) ..................................................................9

*Chen v. Hiko Energy, LLC*,
2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) ...................................................................17

*Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*,
2014 WL 3958080 (E.D.N.Y. Aug. 13, 2014) .....................................................................8

*Dahlinger v. First Am. Specialty Ins. Co.*,
2020 WL 1511261 (N.D.N.Y. Mar. 30, 2020) ..........................................................1, 17, 19

*DePasquale v. Allstate Ins. Co.*,
179 F. Supp. 2d 51 (E.D.N.Y. 2002) ..................................................................................16

*Deveraux v. City of Chicago*,
1992 WL 332305 (N.D. Ill. Nov. 5, 1992) ........................................................................20

*Diesel Barbershop, LLC v. State Farm Lloyds*,
2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)....................................................8, 9, 11, 21

*Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*,
2012 WL 1077448 (E.D.N.Y. Mar. 9, 2012).......................................................................17

*Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*,
945 N.E.2d 1013 (N.Y. Ct. App. 2011) ................................................................................6

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) ..................................................................9, 11

*Greenspan v. Allstate Ins. Co.*,
937 F. Supp. 288 (S.D.N.Y. 1996) ......................................................................................16

*Infostar Inc. v. Worcester Ins. Co.*,
924 F. Supp. 25 (S.D.N.Y. 1996) ........................................................................................16

*Jahier v. Liberty Mut. Grp.*,
64 A.D.3d 683 (N.Y. App. Div. 2009) ..................................................................................8

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
2010 WL 4026375 (E.D. La. Oct. 12, 2010) .......................................................................14

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
2020 WL 886120 (D.S.C. Feb. 24, 2020) ...........................................................................14

*Lansing v. Carroll*,
868 F. Supp. 2d 753 (N.D. Ill. 2012) ..................................................................................21

*Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*,
655 N.E.2d 842 (Ill. 1995)....................................................................................................6

*Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*,
71 N.E.3d 556 (N.Y. Ct. App. 2017) ....................................................................................6

*Liberty Surplus Ins. Corp. v. Segal Co.*,
420 F.3d 65 (2d Cir. 2005)..................................................................................................18

*Malaube, LLC v. Greenwich Ins. Co.*,
2020 WL 5051581 (S.D. Fla. Aug. 26, 2020).................................................................11, 13

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
2020 WL 4782369 (11th Cir. June 11, 2018) ......................................................................12

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
884 N.E.2d 1130 (Ohio Ct. App. 2008)...............................................................................13

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
    2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) ..............................................9, 20, 21

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ........................................................14

*N.Y. Univ. v. Cont'l Ins. Co.*,
    662 N.E.2d 763 (N.Y. Ct. App. 1995) ......................................................15, 17, 20

*Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*,
    2011 WL 13214381 (E.D. Tex. Mar. 30, 2011) ....................................................14

*O.K. Petroleum v. Travelers Indem. Co.*,
    2010 WL 2813804 (S.D.N.Y. July 15, 2010) ........................................................18

*Panasia Estates, Inc. v. Hudson Ins. Co.*,
    886 N.E.2d 135 (N.Y. 2008).....................................................................................19

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
    2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ......................................................11

*Platek v. Town of Hamburg*,
    26 N.E.3d 1167 (N.Y. 2015)......................................................................................7

*Polidoro v. Chubb Corp.*,
    354 F. Supp. 2d 349 (S.D.N.Y. 2005).....................................................................20

*Raifman v. Berkshire Life Ins. Co.*,
    81 F. Supp. 2d 412 (E.D.N.Y. 2000) ........................................................................6

*Ripka v. Safeco Ins.*,
    2015 WL 3397961 (N.D.N.Y. May 26, 2015) ......................................................19

*Rose's 1, LLC v. Erie Ins. Exch.*,
    2020 WL 4589206 (D.C. Super. Ct. Aug. 8, 2020) ........................................11, 21

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    302 A.D.2d 1 (N.Y. 2002) ................................................................1, 10, 12, 21

*Royal Indem. Co. v. Salomon Smith Barney, Inc.*,
    308 A.D.2d 349 (N.Y. App. Div. 2003) .................................................................20

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
    2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ........................................................14

*Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*,
    30 F. Supp. 3d 166 (E.D.N.Y. 2014) ......................................................................18

*Smurfit Newsprint Corp. v. Se. Paper Mfg. Co.*,
   368 F.3d 944 (7th Cir. 2004) ...................................................................................6

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
   No. 20-cv-03311-VEC (S.D.N.Y. May 14, 2020) ..................................................10

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009) ....................................................................................17

*Spirit Locker, Inc. v. Evo Direct, LLC*,
   696 F. Supp. 2d 296 (E.D.N.Y. 2010) ...................................................................17

*Sukup v. State of N.Y.*,
   227 N.E.2d 842 (N.Y. 1967) ..................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................5

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) .............................................8, 9, 21

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
   475 F. App'x (6th Cir. 2012) ..................................................................................13

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*,
   238 F. Supp. 3d 314 (N.D.N.Y. 2017) ...................................................................18

*Village of Sylvan Beach v. Travelers Indem. Co.*,
   55 F.3d 114 (2d Cir. 1995) ......................................................................................6

*Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*,
   747 N.E.2d 955 (Ill. App. Ct. 2001) ........................................................................6

*Wiener v. UnumProvident Corp.*,
   202 F. Supp. 2d 116 (S.D.N.Y. 2002) ...................................................................20

**Rules**

Federal Rule of Civil Procedure 9(g) ...............................................................................19

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................5

**Statutes**

New York General Business Law § 349 ............................................................................15

vi

## INTRODUCTION

Plaintiff America's Kids, LLC seeks coverage under its commercial property insurance policy with Defendant Zurich American Insurance Company for alleged business losses incurred at its kids clothing stores. Specifically, America's Kids seeks coverage for lost "Business Income" and "Extra Expenses" incurred because of COVID-19 and civil authority orders issued to reduce the spread of the virus. Because America's Kids cannot allege that it satisfies several requirements for coverage under the policy, it fails to state any claim as a matter of law.

*First*, the Business Income, Extra Expense, Microorganisms, and two Civil Authority provisions under which America's Kids seeks coverage require a "covered cause of loss." But the policy contains an express exclusion for losses that were directly or indirectly caused by a virus. That means that America's Kids has not pleaded, and cannot plead, a "covered cause of loss."

*Second*, all of the coverage provisions at issue require "direct physical loss of or damage to property." America's Kids alleges that its stores sustained "direct physical loss and damage" as a "result of the presence of COVID-19 particles, hazardous human respiratory droplets, and/or the COVID-19 pandemic." Compl. ¶¶ 88-89. But under New York law—which applies here— "direct physical loss or damage" is "limited to losses involving physical damage." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. 2002). Applying New York law, the Southern District of New York already has rejected the very premise underpinning the entirety of America's Kids' complaint, concluding that the virus "damages lungs . . . . It doesn't damage the property." Across the country, courts have been reaching the same result nearly uniformly and dismissing claims, like that of America's Kids, that attempt to stretch *property* insurance policies to cover economic losses unhinged from any property loss or damage.

*Third*, the Civil Authority coverage provisions require the civil authority orders to have been issued in "response" to "direct physical loss of or damage to property" within one mile from the insured location for which America's Kids seeks coverage. America's Kids alleges only that "[u]pon information and belief, human respiratory droplets and/or COVID-19 virus particles have been physically present at or around Plaintiff's insured premises—both airborne and on surfaces." Compl. ¶ 88. But this conclusory statement based on "information and belief" falls far short of pleading *facts* necessary to state a plausible claim. And pleading the mere *presence* of the virus is not the same as pleading that property loss or damage actually occurred within the required one-mile radius and that the civil authority orders were issued in "response" to that specific property loss or damage.

For these reasons, all of America's Kids' claims should be dismissed. In addition, the claims for bad faith and a violation of New York General Business Law § 349 fail for several reasons independent from the fact that coverage does not exist. And the declaratory-judgment claim should be dismissed as duplicative of the breach-of-contract claim. Because these flaws cannot be remedied by amendment, the entire action should be dismissed with prejudice.

## BACKGROUND

America's Kids "operates 18 retail establishments" in Illinois, New York, New Jersey, Pennsylvania, Maryland, and Washington, DC, "offering a range of children's clothes, shoes, accessories, school uniforms, toys, and furniture." ECF No. 1 ("Compl.") ¶ 1; ECF No. 1-1 ("Policy") at 28-49.[1] Under its Policy with Zurich for April 14, 2019 to April 14, 2020, America's Kids seeks first-party property-insurance coverage for "business losses and extra expense incurred

---

[1] America's Kids incorporates the policy into its complaint by reference. Compl. ¶ 1 ("Defendant issued to Plaintiff Policy No. CPO 9156382-05 for the policy period between April 14, 2019 to April 14, 2020. The policy is attached as Exhibit A.").

2

. . . in connection with [government closure orders] and the COVID-19 pandemic." Compl. ¶ 129.

Specifically, America's Kids invokes the (1) "Business Income Coverage Form (Excluding Extra

Expense)," (2) "Extra Expense Coverage Form," (3) Civil Authority additional coverages, and

(4) "Microorganisms" additional coverage. Compl. ¶ 2.

> The "Business Income" form provides the following coverage:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the "**period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss"**. We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "**premises"**. (Policy at 159, ¶ A.)[2]

The "Extra Expense Coverage Form" provides the following coverage:

> We will pay for the actual and necessary **"extra expense"** you incur due to direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown for Extra Expense on the Declarations. The loss or damage must be directly caused by a **"covered cause of loss"**. We will not pay more than the applicable Limit of Insurance shown on the Declarations for Extra Expense at that "**premises"**. (Policy at 168, ¶ A.)

> Both the "Business Income Coverage Form (Excluding Extra Expense)" and the "Extra

Expense Coverage Form" provide "additional coverages." Among those "additional coverages"

is "Civil Authority" coverage. The Civil Authority provision in the Policy's "Business Income

Coverage Form (Excluding Extra Expense)" provides coverage for lost business income when a

civil authority prohibits access to America's Kids' premises due to direct physical loss of or

damage to property within one mile of the premises that is caused by a covered cause of loss:

> We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary **"suspension"**, or delay in the start, of your **"operations"** if the **"suspension"** or delay is caused by order of civil authority that prohibits access to the **"premises"** or **"reported unscheduled premises"**. That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The loss or damage must be directly caused by a **"covered cause of loss"**. (Policy at 159, ¶ B.1.)

---

[2]      The Policy uses bold typeface to identify defined terms.

The Policy provides a nearly identically worded Civil Authority coverage for "Extra Expense" that America's Kids incurs—*i.e.*, "operating expenses you incur during the 'period of restoration' that would not have been necessary to incur if there had been no direct physical loss or damage to property," as more fully defined in the Policy.  Policy at 168, ¶ B.1 (bolded text omitted); 80, ¶ 24 (bolded text omitted).

A "covered cause of loss" is an indispensable precondition for availability of the Business Income, Extra Expense, Civil Authority, and Microorganisms coverages.  The Policy defines "covered cause of loss" as "a fortuitous cause or event, *not otherwise excluded*, which actually occurs during this policy period."  Policy at 77, ¶ 14. (emphasis added).  The "Business Income Coverage Form" and "Extra Expense Coverage Form" exclude from coverage any losses that are caused by a virus.  Under Section B ("Excluded Causes of Loss") of the Real and Personal Property Coverage Form, the Policy's "Microorganisms" exclusion states:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. . . .

> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.  (Policy at 97, ¶ B.12.)[3]

In turn, "**microorganism**" is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, **'fungus'**, wet or dry rot, *virus*, algae, or bacteria, or any by-product."  Policy at 82, ¶ 44 (boldface in original; italics added).

While the Policy generally excludes property loss or damage caused by "Microorganisms,"

---

[3]  The exclusions in the Real and Personal Property Coverage form apply to the "Business Income" and "Extra Expense" coverage with certain enumerated exceptions that are inapplicable here.  Policy at 162, ¶ C.1; 169, ¶ C.1.

including viruses, it provides Business Income—but not Extra Expense—coverage up to an annual

aggregate limit of $25,000 for loss or damage caused by "Microorganisms," but only if the

microorganisms are "*the result of*" a covered cause of loss. Policy at 160, ¶ B.8; 53. Specifically,

the Business Income form states:

> We will pay for the actual loss of **"business income"** you sustain due to the:
>
> **a.** Necessary **"suspension"** of your **"operations"** from direct physical loss of or damage to Covered Property caused by **"microorganisms"** when the "**microorganisms**" are the result of a **"covered cause of loss"**; or
>
> **b.** Prolonged **"period of restoration"** due to the remediation of **"microorganisms"** from a covered loss. (Policy at 160-61, ¶ B.8).

Relying on these policy provisions, America's Kids alleges claims for breach of contract,

violation of New York's General Business Law § 349(a), bad faith, and declaratory judgment.

## ARGUMENT

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Determining whether a

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, a

court "must consider the complaint in its entirety," as well as "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the Court may consider the Policy

itself; the civil authority orders referenced in the complaint; and the judicially noticeable fact that

the virus that causes COVID-19 can be cleaned from surfaces, disinfected, or both, using standard

household cleaning and disinfectant products, as confirmed by guidance from the Centers for

Disease Control and Prevention ("CDC") and Environmental Protection Agency.[4]

## I. Plaintiff Has Not Stated, And Cannot State, A Claim For Breach Of Contract.

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract," *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995), and should be "read as a whole" such that "no provision is rendered meaningless," *Raifman v. Berkshire Life Ins. Co.*, 81 F. Supp. 2d 412, 416 (E.D.N.Y. 2000).[5] "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 560 (N.Y. Ct. App. 2017). "If the plain language of the policy is determinative, [the Court] cannot rewrite the agreement by disregarding that language." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1017 (N.Y. Ct. App. 2011). Nor should the Court "accord a policy a strained construction merely because that interpretation is possible. An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." *Bretton v. Mut. of Omaha Ins. Co.*, 110 A.D.2d 46, 49 (N.Y. App.

---

[4]     Zurich has filed an accompanying request for incorporation by reference and judicial notice.

[5]     "A federal court sitting in diversity applies choice-of-law rules of the forum state, here, Illinois." *Smurfit Newsprint Corp. v. Se. Paper Mfg. Co.*, 368 F.3d 944, 949 (7th Cir. 2004). "The Illinois choice of law rule for insurance contracts is the 'most significant contacts' test." *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. App. Ct. 2001). Under that test, "insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (citations omitted). America's Kids is incorporated and headquartered in New York; New York is the location of 7 of America Kid's 21 locations with Business Income and Extra Expense coverages, the most of any state; and the Policy contains several New York endorsements, including one for cancellation and nonrenewal of the Policy. Compl. ¶ 5; Policy at 28-49. Under *Lapham-Hickey*, New York law applies here. The complaint assumes that New York law applies; it asserts a claim for "Bad Faith Denial of Insurance" under New York statutory law, seeks to represent a nationwide class and several subclasses consisting of "[a]ll persons and entities that own an interest in a New York business," and alleges that Zurich did not conduct a "claim investigation as required under New York law." Compl. ¶¶ 110, 132-44; Prayer for Relief 2.b.

Div. 1985) (internal citation omitted).

It is America's Kids' "burden [as the insured] to establish the existence of coverage." *Platek v. Town of Hamburg*, 26 N.E.3d 1167, 1171 (N.Y. 2015). America's Kids cannot do so.

### A.    Loss Directly Or Indirectly Caused By A Virus Is Excluded.

For all coverages invoked by America's Kids, the loss or damage "must be directly caused by a **'covered cause of loss.'**" Policy at 159, ¶ B.1; 168, ¶ B.1. The Policy defines a "covered cause of loss" as a "fortuitous cause or event, *not otherwise excluded*." Policy at 77, ¶ 14 (emphasis added).

The Complaint expressly alleges that the virus is the cause of America's Kids' losses. *See* Compl. ¶ 89 ("Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and damage to its premises . . . as a result of the presence of COVID-19 particles, hazardous human respiratory droplets, and/or the COVID-19 pandemic. The COVID-19 pandemic and the presence of hazardous respiratory droplets caused direct physical loss of and/or damage to the premises insured under the Policy . . . ."). These allegations bring America's Kids' claim squarely within the Policy's Microorganism exclusion, which precludes coverage for (i) losses "consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **'microorganisms'**," defined to include viruses, and (ii) "loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects" of a virus. Policy at 97, ¶ B.12. The Policy thus unambiguously excludes coverage for the precise situation pleaded here—business-income losses directly or indirectly caused by the virus.

The Policy's anti-concurrent causation language underscores that no coverage exists. That language specifies that the virus exclusion applies "regardless of any other cause or event . . . that

contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered." Policy at 97, ¶ B.12. Thus, regardless of how America's Kids characterizes the cause of loss—whether as the virus itself, the COVID-19 pandemic, or the civil authority orders issued to prevent the spread of the virus—the exclusion still applies.

Courts applying New York law routinely enforce anti-concurrent causation clauses such as the one in America's Kids' Policy, and so too have courts addressing COVID-19 property insurance claims. *See, e.g., Jahier v. Liberty Mut. Grp.*, 64 A.D.3d 683, 685 (N.Y. App. Div. 2009) (enforcing a "water damage" exclusion as "clearly and unambiguously" applying to plaintiffs' loss because the exclusion applies to loss "directly or indirectly" caused by "water damage" and "regardless of any other cause or event contributing concurrently or in any sequence to the loss"); *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 2014 WL 3958080, at *8 (E.D.N.Y. Aug. 13, 2014) (holding that an earth movement exclusion "unmistakably applies" because all the insured needed to show was that "soil settlement was 'at least a contributing cause of the damage,'" because the policy's anti-concurrent clause states that "loss or damage due to earth movement is not covered 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss'"); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (applying a virus exclusion's anti-concurrent causation clause to hold that, although the orders "technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community"); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484, at *8-9 (E.D. Mich. Sept. 3, 2020) ("[T]he Virus Exclusion negates any coverage for Plaintiff's loss of income or extra expense" because the "only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would

not have occurred but for COVID-19," and "the Anti-Concurrent Causation Clause . . . extends the Virus Exclusion to all losses where a virus is part of the causal chain.").

America's Kids cannot avoid the Microorganisms exclusion by pointing to the Microorganisms additional coverage under the Business Income coverage form. That coverage is triggered only if the "Microorganisms are *the result of* a covered cause of loss." Policy at 160-61, ¶ B.8. But no "covered cause of loss" has occurred here. The only cause of loss that America's Kids alleges is the virus (Compl. ¶ 89), but that is an excluded cause of loss. Furthermore, America's Kids' coverage request is nonsensical. A "virus" cannot "result" from property loss or damage caused by a virus; it only replicates in the human body.

Several courts have dismissed COVID-19 business-income claims because of a policy's virus exclusion. *See Diesel Barbershop*, 2020 WL 4724305, at *6; *Turek*, 2020 WL 5258484, at *8-9; *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (holding that "neither the Governor's executive order narrowing [plaintiff's] services . . . nor the disinfection of the [property] is a 'Covered Cause of Loss' under the plain language of the policy's [virus] exclusion," which excludes coverage for loss or damage caused "directly or indirectly" by a virus); Pollock Decl. Exs. 29-30 [Order and Hr'g Tr. 20:19-21:18, *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) (virus exclusion barred coverage for business income claim)]. Similarly, the Microorganism exclusion here is fatal to America's Kids' coverage claims. "[T]he parties bargained for an insurance policy that contains an extremely broad Microorganism Exclusion, one which supersedes and replaces any language in the Policy that might otherwise provide coverage for the loss in question." *Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019).

9

**B.    America's Kids Cannot Allege Direct Physical Loss Or Damage.**

All of America's Kids' claims also fail because there is no "direct physical loss of or damage" to property—which is required under all of the coverage provisions at issue.

Under New York law, "direct physical loss or damage" is "limited to losses involving physical damage to the insured's property." *Roundabout Theatre*, 302 A.D.2d at 7.   In *Roundabout*, the court examined a policy that provided "coverage for 'loss of, damage to, or destruction of property or facilities . . . caused by the perils insured against." *Id.* at 6-7.  The perils insured against were "'all risks of direct physical loss or damage to the [insured's] property,' not otherwise excluded." *Id.* at 7.  "Reading these [two] provisions together," the "only conclusion that can be drawn," the court reasoned, is "that the business interruption coverage is limited to losses involving physical damage to the insured's property." *Id.* (quoting 11 Couch on Insurance § 167:15, at 167-20-167-21 (business-interruption policies "generally require[] some physical damage to the insured business in order to permit recovery")).  The court supported its conclusion by referring to other provisions in the policy, such as a provision limiting the period for which the insured could recover its losses to "'such length of time as would be required with exercise of due diligence and dispatch *to rebuild, repair or replace such part of the property herein described as has been lost, damaged or destroyed.*'" *Id.* at 7-8.  The court also reasoned that "[t]he plain meaning of the words 'direct' and 'physical' narrows the scope of coverage." *Id.* at 7.

In denying a motion for preliminary injunction, a federal judge in New York recently recognized that the "*Roundabout* case is a real problem" for coverage for COVID-19-related business-income losses under property insurance policies.  Pollock Decl. Ex. 31 [Hr'g Tr. at 4:17-18, *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (ECF No. 24-1)].  Even if the "virus exists everywhere," as the insured in that case argued, the judge concluded that the virus "damages lungs . . . .  It doesn't damage the property." *Id.* at

4:25-5:4; 6:14-20.

The overwhelming majority of courts across the country to have addressed the issue have reached similar conclusions, even while applying the laws of different states. In *Diesel Barbershop*, the court dismissed the insured's claims with prejudice, holding that "direct physical loss" requires "a distinct, demonstrable, physical alteration of the property." 2020 WL 4724305, at *5, *7. Another federal court held that "losses from inability to use property" as a result of COVID-19 orders "do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *10E, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 5359653, at *6 (C.D. Cal. Sept. 2, 2020). Yet another judge agreed with the conclusion in *10E*, that "government orders forcing [the plaintiffs'] business to stop operating" did not cause "direct physical loss of" the business property. *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020). And a fourth judge, after surveying the law on "direct physical loss or damage" across jurisdictions, concluded that the language requires a "physical problem," because "'direct physical' modifies both 'loss' and 'damage,'" and that the plaintiff could not meet that standard because there was "no allegation, for example, that COVID-19 was physically present on the premises" and thus, not even an allegation of "physical intrusion" by the virus. *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020).

Other courts have held the same. *See* Pollock Decl. Exs. 29-30 [Order and Hr'g Tr. 19:17-20:9, 20:5-9, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) ("[T]he plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e., physical damage to the property.")]; *Rose's 1, LLC v. Erie Ins. Exch.*, 2020 WL 4589206, at *3 (D.C. Super. Ct. Aug. 8,

11

2020) ("[U]nder a natural reading of the term 'direct physical loss,' the words 'direct' and 'physical' modify the word 'loss.' As such, . . . any 'loss of use' must be caused . . . by something pertaining to matter—in other words, a direct physical intrusion on to the insured property".).

Under *Roundabout*, America's Kids must allege "direct physical damage." This follows from the Policy's plain language, "direct physical loss of or damage to property," and is confirmed by the Policy's "period of restoration" language, which defines the end of the period by reference to the insured relocating to a "new permanent location" or having its location "restored to the physical size, construction, configuration, location, and material specifications" that meet minimum safety and other requirements. *See* Policy at 85, ¶ 55. It does not suffice for America's Kids to allege that, "[u]pon information and belief, human respiratory droplets and/or COVID-19 virus particles have been physically present at or around Plaintiff's insured premises" and assert in a conclusory manner that those droplets or particles are causing property loss and damage. Compl. ¶¶ 88-89. Rather, America's Kids must allege facts plausibly establishing that the "virus particles" caused direct physical property damage.

But America's Kids cannot do so. As numerous courts have held, when a substance purportedly causing property loss or damage, such as the virus here, can easily be removed using standard household cleaners, there is no "physical loss of or damage to property" as a matter of law. *See* Pollock Decl. Exs. 24-28 (providing evidence from the CDC, EPA, and OSHA for the judicially noticeable fact that the virus can be cleaned from surfaces, disinfected, or both, using standard household cleaning and disinfectant products). For example, the Eleventh Circuit held that construction dust that had migrated into a nearby restaurant did not cause "direct physical loss" to the property, explaining that, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2020

12

WL 4782369, at *8 (11th Cir. June 11, 2018).  The Sixth Circuit has agreed, holding that, under Michigan law, mold and bacterial contamination in a building's HVAC system did not cause physical loss or damage to the building or to the plaintiff's property inside the building.  *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x, 569, 573 (6th Cir. 2012).  While the plaintiff paid for cleaning expenses, those were an uncovered economic loss; the court did not believe that "the Michigan courts would find basic cleaning" "performed with hot water and Lysol" to constitute physical loss or damage.  *Id*. at 574 n.8 (internal quotation marks omitted).  And a federal district court in Florida has reasoned that, because property has not suffered loss or damage if it merely needs to be cleaned, a business could not claim that it had suffered property loss or damage from COVID-19 after state orders required it to shut its doors.  *Malaube*, 2020 WL 5051581, at *8; *see also Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143-44 (Ohio Ct. App. 2008) (finding that dark staining on wood siding due to mold was not a "physical loss" because it was "only temporary and did not affect the structure of the wood").

Because the virus does not change a property's structure and instead sits passive until it no longer is viable or is wiped away or disinfected, the virus cannot, as a matter of law, cause "physical loss of or damage to property."  This alone also requires dismissal of all of America's Kids' claims.

### C.    The Request For Civil Authority Coverage Fails For An Additional Reason: The Orders Were Not Issued In "Response" To Property Loss Or Damage.

The Policy's two Civil Authority provisions require the relevant civil authority orders to have been issued in "response to direct physical loss of or damage to property located within one mile from" the insured location for which America's Kids seeks coverage.  They were not—they were issued in response to a public health crisis.

As numerous courts have recognized, civil authority insurance provisions "contemplate[]

a sequence of events where direct physical loss or damage to property occurs and then an order prohibiting access *because of that damage* issues." *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at \*4 (E.D. La. Oct. 12, 2010).[6]  Thus, the civil authority order must have been issued *in response to* property loss or damage—that is, after, not before, the loss or damage occurred.  Consistent with these cases, federal district courts have recently dismissed COVID-19 claims for civil authority coverage because the causal link between prior property loss or damage and the government's closure order was missing.  For example, in *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at \*7 (N.D. Cal. Sept. 14, 2020), the court concluded as a matter of law that an insured was "not entitled to Civil Authority coverage" because the government closure orders "were intended to prevent the spread of COVID-19."  Thus, the court reasoned, "[b]ecause the orders were preventative," the insured had failed to "establish the requisite causal link between prior property damage and the government's closure order."  *Id.*  Similarly, in *10E*, 2020 WL 5359653, at \*9, the court dismissed a claim for civil authority coverage because the insureds had failed to "describe particular property damage or articulate any facts connecting the alleged property damage to [the civil authority order's] restrictions."  Rather, the insureds had only "assert[ed] without any relevant detail that 'the property that is damaged is in the immediate area of the Insured Property.'"  *Id.* at \*6.

America's Kids' allegations are no better than the insufficient allegations in *Mudpie* and *10E*.  America's Kids alleges merely "upon information and belief" that "COVID-19 virus

---

[6]     *See also Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, 2011 WL 13214381, at \*6 (E.D. Tex. Mar. 30, 2011) ("[C]overage is provided only for civil authority action *in response to* direct physical *loss of or damage* to property, and courts uniformly interpret this as requiring that such loss or damage precede the action of a civil authority.") (emphasis added); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, at \*8 (D.S.C. Feb. 24, 2020) (no civil authority coverage because no damage to "any property *before* the Governor issued the evacuation order"); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, at \*10 (S.D. Tex. Feb. 15, 2008) (no coverage "[b]ecause the mandatory evacuation order . . . was issued due to the anticipated threat of damage . . . and not due to property damage that had occurred").

particles have been physically present at or around [its] insured premises" and that the virus can cause direct physical loss or damage to property. Compl. ¶¶ 88-89. Like in *10E*, these conclusory allegations do not identify with any "relevant detail" the property that was lost or damaged within the required one-mile vicinity, or connect that specific property loss or damage to any of the relevant orders. Nor could plaintiff do so, because the orders were responses to the unfolding health crisis resulting from the spread of the virus and were preventative measures designed to stop the threat that further spread posed to human health and life. *See* Pollock Decl. Exs. 1-23.[7]

## II. America's Kids Has Not Stated A Claim Under N.Y. General Business Law § 349.

General Business Law § 349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

To state a claim, America's Kids must allege a "deceptive act or practice." Attempting to do so, America's Kids alleges that Zurich's purported practice of denying COVID-19 business-interruption claims "constitute[s] 'improper claims practices' under Illinois law," 215 ILCS 5/154.6(h), (n), and "'unfair claims settlement practices' under New York Insurance Law §2601." Compl. ¶¶ 138-39, 141. But America's Kids may not use these purported statutory violations to allege a "deceptive act or practice" because both statutes lack a private right of action.[8] As the Second Circuit has held, "a plaintiff cannot circumvent [a statute's] lack of a private right of action" by claiming that the statutory violations are actionable as "deceptive practices" under Section 349. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (citing *Conboy*

---

[7]      Although one of New York City's orders briefly mentions property loss and damage (*see* Pollock Ex. 2), the order, like America's Kids' allegations, provides no factual basis for that statement and does not identify where that purported property loss and damage occurred, if at all, in the 302.6 square miles of New York City and thus in relation to America's Kids' New York City locations.

[8]      *See N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. Ct. App. 1995) (recognizing that "Insurance Law § 2601 does not give rise to a private cause of action"); *Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.*, 981 N.E.2d 1120, 1127 (Ill. App. Ct. 2012) ("[S]ection 154.6 does not give rise to a private remedy or cause of action by a policyholder against an insurer but is instead regulatory in nature.").

*v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). By predicating its Section 349 claim on alleged violations of state statutes that lack private rights of action, America's Kids has failed to allege a "deceptive practice" as a matter of a law. *Id.* (affirming dismissal of a Section 349 claim on that ground).

Moreover, America's Kids must allege a deceptive practice that is "consumer-oriented" in the sense that it has a "broad impact on consumers at large." *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58-59, 62 (E.D.N.Y. 2002). Zurich's purported practice of denying COVID-19 business-interruption claims is not such a practice because "[a]n insurance company's actions in settling a claim are not inherently consumer-oriented." *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 294 (S.D.N.Y. 1996). Numerous courts have held that "disputes between policy holders and insurance companies concerning the scope of coverage" are merely "private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *DePasquale*, 179 F. Supp. 2d at 62 (citing six cases and stating that "private contract disputes unique to the parties" do not "fall within the ambit of the statute").

Trying to avoid the "[a]lmost uniform[]" holdings of the[] cases," *id.*, America's Kids alleges that Zurich engages in "consumer-oriented conduct" because it "operates its business providing insurance services throughout" New York and "furnishes its policyholders with standard policy forms to be purchased at large," Compl. ¶ 134. But the "mere fact that other consumers have purchased similar policies and that some of them, presumably, have dealt with [Zurich's] claims department[] is not, standing alone, sufficient to meet [the consumer-oriented] standard." *Infostar Inc. v. Worcester Ins. Co.*, 924 F. Supp. 25, 29 (S.D.N.Y. 1996). Indeed, this is far from a consumer case. America's Kids—a "business enterprise that operates 18 retail establishments" and "employs hundreds of people across the country" (Compl. ¶ 1)—is a sophisticated business

16

party that is attempting to use Section 349 as a "sword" in a "business-versus-business dispute[]" involving a $12.57 million insurance policy. *Spirit Locker, Inc. v. Evo Direct, LLC*, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010). This is not the "paradigm 349 case," which "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods." *Id.* (citation omitted). It certainly does not involve the "'modest' type of transaction the statute was primarily intended to reach," *N.Y. Univ.*, 662 N.E.2d at 771.

Lastly, America's Kids must allege that Zurich's purported practice of denying claims is "deceptive" in a "material way" and that the practice injured it. But Zurich's purported practice of denying COVID-19 business-interruption claims cannot be "deceptive," or cause injury, as a matter of law because the policy does not afford coverage. *See Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, 2012 WL 1077448, at *16 (E.D.N.Y. Mar. 9, 2012) ("[The insurer] correctly denied coverage for the claims . . . and therefore [the insured] cannot demonstrate the third element of a [Section] 349 claim, that it was injured by any purported deceptive practice."). Moreover, the only injury that America's Kids alleges is a "loss of the coverage benefits" and the payment of premiums, Compl. ¶ 142, and therefore it has failed to allege a loss "independent of the loss caused by the alleged breach of contract," as required to state a claim. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "[T]he monetary loss allegedly sustained as a result of the defendant's deception must be 'independent of the loss caused by the alleged breach of contract.'" *Chen v. Hiko Energy, LLC*, 2014 WL 7389011, at *5 (S.D.N.Y. Dec. 29, 2014) (citations omitted)).

## III. America's Kids Cannot Allege "Bad Faith" As A Matter of Law.

America's Kids' "bad faith" claim fails—regardless of whether it sounds in contract or tort.

*First*, America's Kids cannot state a "bad faith" breach-of-contract claim because Zurich's denial of coverage was objectively reasonable, and in fact correct. For a claim of "bad faith" denial of insurance coverage, America's Kids "must allege more than an arguable difference of

opinion . . . over coverage." *O.K. Petroleum v. Travelers Indem. Co.*, 2010 WL 2813804, at *4 (S.D.N.Y. July 15, 2010) (internal quotation marks and citation omitted). It must allege that "no reasonable [insurance] carrier would, under the given facts" deny coverage. *Sukup v. State of N.Y.*, 227 N.E.2d 842, 844 (N.Y. 1967). That is a "high standard to prevail." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 329 (N.D.N.Y. 2017). Applying that high standard, the Second Circuit affirmed dismissal of a counterclaim for attorneys' fees because, even though the district court rejected the insurer's coverage position, the coverage "dispute reflect[ed] an 'arguable difference of opinion' rather than bad faith." *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67, 70 (2d Cir. 2005).

America's Kids' allegations do not meet this "high standard" because Zurich's denial of coverage was correct, *see supra* pages 6-15, and at a minimum "arguable." *See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 197 F. Supp. 3d 616, 633 n.24 (S.D.N.Y. 2016) ("[G]iven the Court's conclusion that the . . . exclusion applies, [plaintiff's] contention that it is entitled to recover . . . based on [defendant's] allegedly unreasonable coverage position and bad faith claims-handling has no merit."). Moreover, America's Kids cannot plausibly allege that "no reasonable [insurance] carrier" would deny coverage when the overwhelming majority of courts have *agreed* that no coverage exists in similar circumstances as a matter of law. *See supra* pp. 9, 11-12, 14 (collecting cases).

*Second*, the "bad faith" claim is duplicative of the breach-of-contract claim. Applying New York law, a federal court dismissed a bad-faith claim as duplicative of the breach-of-contract claim because the insurer's "decision to deny plaintiff coverage [was] the crux of plaintiff's bad faith allegations." *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 171 (E.D.N.Y. 2014). The same result is dictated here because America's Kids' bad-faith claim arises

18

from the same facts as its contract claim—namely Zurich's denial of coverage.[9]

*Third*, America's Kids has failed to adequately allege consequential damages. "[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing [*i.e.*, bad faith] may be asserted in an insurance contract context" only if "the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Panasia Estates, Inc. v. Hudson Ins. Co.*, 886 N.E.2d 135, 137 (N.Y. 2008). Because consequential damages are special damages, *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014), Federal Rule of Civil Procedure Rule 9(g) required America's Kids to plead those damages "with particularity," *Dahlinger v. First Am. Specialty Ins. Co.*, 2020 WL 1511261, at *3 (N.D.N.Y. Mar. 30, 2020). But America's Kids' conclusory allegation—that it has "sustained, and continue[s] to sustain, substantial consequential damages," Compl. ¶ 151— does not meet either requirement. America's Kids does not "even allege a dollar amount," let alone what consequential damages it incurred. *Dahlinger*, 2020 WL 1511261, at *3; *see* Compl. ¶ 151. This pleading failure is fatal. *See Dahlinger*, 2020 WL 1511261, at *3; *Ripka v. Safeco Ins.*, 2015 WL 3397961, at *5-6 (N.D.N.Y. May 26, 2015) (dismissing consequential-damages claim because insured "failed to offer sufficiently particularized detail regarding what her special damages might be" and did not plead "specific facts capable of showing that consequential damages, beyond the limits of the [] Policy, were reasonably contemplated by the parties, or that they considered, at the time of contracting, that consequential damages would be available in the event of . . . breach of the policy").

*Fourth*, to the extent that America's Kids' "bad faith" claim sounds in tort rather than

---

[9]     *Compare* Compl. ¶ 129 ("By denying coverage for any business losses and extra expense incurred . . . in connection with the Closure Orders and the COVID-19 pandemic, Zurich has breached its coverage obligations under the Policy."), *with* ¶ 147 ("Defendant breached its duty of good faith and fair dealing by wrongfully, and without reasonable justification, denying coverage . . . under the Policy.").

contract, it is not cognizable. America's Kids alleges in a conclusory fashion that Zurich acted "intentionally, fraudulently, maliciously, and/or recklessly" and seeks "punitive damages for [this alleged] bad faith," a traditional tort remedy. Compl. ¶ 148; Prayer for Relief ¶ 7. But New York's highest court has held that an insurer does not owe a "tort duty of care flowing to the insured separate and apart from the insurance contract." *N.Y. Univ.*, 662 N.E.2d at 768. Accordingly, America's Kids' "bad faith" claim, to the extent it sounds in tort, must be dismissed. *Alexander v. Geico Ins. Co.*, 35 A.D.3d 989, 990 (N.Y. App. Div. 2006) ("[N]o separate cause of action exists in tort for an insured's alleged bad faith in failing to perform its contractual obligations."); *Royal Indem. Co. v. Salomon Smith Barney, Inc.*, 308 A.D.2d 349, 350 (N.Y. App. Div. 2003) ("Allegations that an insurer had no good faith basis for denying coverage . . . do not give rise to an independent tort cause of action, regardless of the insertion of tort language into the pleading.").[10]

## IV.    America's Kids' Declaratory-Judgment Claim Must Be Dismissed.

A declaratory judgment is a remedy, not a standalone claim. America's Kids cannot invoke this Court's jurisdiction to provide that remedy because it must first state a claim—which it has failed to do. *See Deveraux v. City of Chicago*, 1992 WL 332305, at *3 (N.D. Ill. Nov. 5, 1992) ("Plaintiffs' failure to state a claim denies this court subject matter jurisdiction over plaintiffs' declaratory judgment action."); *Mauricio Martinez*, 2020 WL 5240218, at *3 (dismissing declaratory judgment claim in a COVID-19 property insurance case because, having dismissed the breach of contract claim, there no longer was any "actual controversy" over the existence of coverage). Furthermore, America's Kids' declaratory-judgment claim should be dismissed as

---

[10]    *See also Wiener v. UnumProvident Corp.*, 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002) ("Under New York law, an independent tort action for bad faith denial of insurance coverage is not recognized."); *Polidoro v. Chubb Corp.*, 354 F. Supp. 2d 349, 352 (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law.").

duplicative, because its breach-of-contract claim necessarily requires the Court to address whether coverage exists. *See Turek*, 2020 WL 5258484, at \*10 (dismissing with prejudice declaratory-judgment claims as "duplicat[ive]" of breach-of-contract claims where plaintiff sought a declaratory judgment that the policy provides coverage for "business interruption losses incurred by the [civil authority order] and that the Virus Exclusion is inapplicable"); *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763–64 (N.D. Ill. 2012) ("Because the declaratory judgment claim (Count I) fails to add anything not already raised in the breach of contract claim (Count II), in an exercise of its discretion the court dismisses Count I." (internal quotation marks omitted)).

**V.    America's Kids' Complaint Should Be Dismissed With Prejudice.**

If given leave to re-plead, America's Kids would never be able to state a claim because it cannot allege facts that would overcome the Microorganism exclusion. Nor could it avoid the legal conclusion that flows from *Roundabout*—namely, that the virus does not cause "direct physical loss of or damage to property." Nor could it plead around the undeniable facts that the civil authority orders were not issued in "response to direct physical loss of or damage to property located within one mile from" any of its insured premises. Because leave to amend would be futile, the action should be dismissed with prejudice. *See Diesel*, 2020 WL 4724305, at \*7 (amendment futile because "no direct physical loss" and the "Virus Exclusion applie[d]"); *Mauricio Martinez*, 2020 WL 5240218, at \*3 (amendment futile "[b]ecause the insurance policy specifically excludes loss caused because of a virus"); *Rose's 1, LLC*, 2020 WL 4589206, at \*5; *Turek*, 2020 WL 5258484, at \*11.

**CONCLUSION**

The Court should dismiss America's Kids' complaint with prejudice.

Dated:  September 21, 2020            By:    */s/ Debra Bogo-Ernst*
                                                     Debra Bogo-Ernst

Debra Bogo-Ernst
Samantha Booth
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
dernst@mayerbrown.com
sbooth@mayerbrown.com

Bronwyn F. Pollock (*admitted pro hac vice*)
Douglas A. Smith (*admitted pro hac vice*)
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
bpollock@mayerbrown.com
dougsmith@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
aparasharami@mayerbrown.com

*Attorneys for Defendant Zurich American
Insurance Company*