IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICA'S KIDS, LLC, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| *Plaintiff*, | ) No. 20 C 3520<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| ZURICH AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff America's Kids, LCC brings this class action lawsuit against Defendant Zurich American Insurance Company ("Zurich") following Zurich's denial of insurance coverage for America's Kid's lost business income and extra expenses due to the coronavirus pandemic and ensuing closure orders. America's Kids asserts claims for declaratory relief and breach of contract. Before the Court is Zurich's motion to dismiss the amended complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Regent's motion to dismiss [36] is granted.

**BACKGROUND**

The following factual allegations are taken from America's Kids' amended complaint (Dkt. 32) and are assumed to be true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

**I.      COVID-19 and the Closure Orders**

America's Kids operates 18 retail stores in Illinois, New York, New Jersey, Pennsylvania, Maryland, and Washington, DC. (Dkt. 32 at ¶ 1). COVID-19 is a highly contagious airborne virus that spreads through respiratory droplets. (*Id*. at ¶¶ 36). America's Kids claims that between

1

March 5 and March 9, 2020, some of its employees tested positive for COVID-19 and that since, "people carrying COVID-19 particles in, on, or about their person, have been physically present at or around all of" its insured premises. (*Id*. at ¶ 88). On March 11, 2020, the World Health Organization declared that the emerging threat of COVID-19 constituted a global pandemic. (*Id*. at ¶ 41). In response, government authorities in the states and localities in which America's Kids' stores are located imposed various closure and stay-at-home orders requiring "non-essential" businesses, like America's Kids, to cease operations. (*Id*. at ¶¶ 53, 59, 65, 70, 79, 82). These closure orders and the presence of COVID-19 at its stores caused America's Kids to incur significant business losses. (*Id*. at ¶¶ 90–91). America's Kids also alleges that it suffered losses because locations, such as schools, on which it depends to attract customers to its business also suffered significant losses due to the pandemic. (*Id*. at ¶ 91). Relatedly, America's Kids incurred losses due to "delay and shortages in its merchandise and the cancellation of events which [it] relies on to direct customers to its business." (*Id*.)

## II. The Policy

At the time of the closure orders, America's Kids held an "all-risk" insurance policy with Zurich effective from April 14, 2019 through April 14, 2020 ("the Policy"). (*Id*. at ¶¶ 12–13). [1] The Policy generally covers losses resulting from any "covered cause of loss," defined as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period." (*Id*. at ¶ 13). One type of coverage included in the Policy is loss of business income, which provides:

> We will pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The

---

[1] The Policy is attached to the complaint and referenced therein, and thus, may be considered along with the allegations. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such.").

> "suspension" must be caused by direct physical loss of or damage to property at a "premises" at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "covered cause of loss". We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "premises".

(*Id*. at ¶¶ 17–18) (Ex. A at 159).

Another type of covered loss is extra expense, which provides:

> We will pay for the actual and necessary "extra expense you incur due to direct physical loss of or damage to property at a "premises" at which a Limit of Insurance is shown for Extra Expense on the Declarations. The loss or damage must be directly caused by a "covered cause of loss". We will not pay more than the applicable Limit of Insurance shown on the Declarations for Extra Expense at that "premises".

(Dkt. 32 at ¶¶ 24–25) (*Id*. at 168).

<u>Civil Authority & Dependent Premises Additional Coverage</u>

Business income and extra expense coverage both include additional coverage for civil authority, under which Zurich agreed to "pay for the actual and necessary 'extra expense'" and "the actual loss of 'business income'" sustained by America's Kids "resulting from the necessary 'suspension'" of operations, if the suspension "is caused by order of civil authority that prohibits access to the 'premises." (Dkt. 32 at ¶¶ 28–29) (Ex. A at 159, 168). The order "must result from a civil authority's response to direct physical loss of or damage to property located within one mile" from the insured premises where the lost business income or extra expense was incurred. (*Id*.)

The Policy also covers business income and extra expense losses "caused by direct physical loss of or damage to property… at a 'dependent premises.'" (Dkt. 32 at ¶¶ 30–33). A "dependent premises" is a location owned and operated by others which America's Kids depends on (1) "to deliver materials or services to [it], or to others under [its] contract of sale," (2) "to accept [its] products or services[,]" (3) "to manufacture products for

3

delivery to [its] customers under contract of sale", and (4) "to attract customers to [its] business." (*Id*. at ¶ 34).

### Microorganism Exclusion

The Policy expressly excludes coverage for business income and extra expense losses caused by microorganisms, as follows:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms", unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

(Ex. A at 97, 162, 169). Microorganism is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, virus, algae, or bacteria, or any by-product." (Ex. A at 82). Notwithstanding this broad exclusion, the Policy encompasses coverage for loss of business income "sustain[ed] due to the [n]ecessary 'suspension' of your 'operations from direct physical loss of or damage to Covered Property caused by "microorganisms" when the "microorganisms" are the result of a "covered cause of loss." (Ex. A at 160).

### III. America's Kids' Claim for Coverage

On March 27, 2020, America's Kids submitted a claim under this Policy for coverage of its business income and extra expense losses resulting from COVID-19 and the closure orders. (*Id*. at ¶ 92). On April 27, 2020, Zurich denied the claim on grounds that America's Kids' losses were not covered by the Policy. (*Id*. at ¶ 93, Ex. B). On June 16, 2020, America's Kids filed the instant suit seeking declaratory judgment that its losses are covered and asserting a claim for breach of contract against Zurich. (Dkt 1) (Dkt. 32).

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a 12(b)(6) motion, a complaint must contain sufficient facts that when "accepted as true … 'state a claim to relief'" that is facially "'plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Conclusory statements and legal conclusions, however, are not entitled to the same deference. *Iqbal*, 556 U.S. at 680.

**DISCUSSION**

Under New York law [2], "insurance policies are interpreted according to general rules of contract interpretation". *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). These principles dictate that the insurance policy should be read as a whole to give meaning to every provision. *MDW Enterprises, Inc. v. CNA Ins. Co.*, 772 N.Y.S.2d 79 (N.Y. App. Div. 2004); *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67, 74 (N.Y. App. Div. 2020). "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning[.]" *Vigilant Ins. Co. v. Bear Stearns Companies, Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008). But "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation…." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010). The insured party "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New*

---

[2] The parties agree that for purposes of this motion, New York law applies. (Dkt. 37 at fn. 6) (Dkt. 43 at fn. 5).

*Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).

I.  **Zurich's Motion for Judicial Notice**

As a preliminary matter, Zurich request the Court to take judicial notice of the fact that COVID-19 "can be cleaned from surfaces, disinfected, or both, using standard household cleaning and disinfectant products." (Dkt. 38 at 5). [3] As support for this statement, Zurich cites articles and guidance issued by the Center for Disease Control ("CDC"), the Environmental Protection Agency ("EPA"), and the Occupational Safety and Health Administration ("OSHA"). (*Id*.) A Court may take judicial notice of any "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). After nearly two years of living amidst the virus, the fact that COVID-19 can be cleaned from surfaces is well-known in this community and is confirmed by the reliable sources (CDC, EPA, and OSHA) cited by Zurich. *See e.g, Ferreyra v. Decker*, 2020 WL 1989417, at *6 (S.D.N.Y. Apr. 27, 2020) (relying on information available on CDC's website to take "judicial notice that COVID-19 causes severe medical complications and has increased lethality amongst people of advanced age, and those with underlying health problems, or both"); *Valenzuela Arias v. Decker*, 2020 WL 1847986, at *4 (S.D.N.Y. Apr. 10, 2020) (taking judicial notice of medical conditions recognized by the CDC as increasing the risks of contracting COVID-19 or developing serious, and potentially fatal, complications from the virus). Zurich's motion for judicial notice is granted.

II. **Business Income & Extra Expense Coverage**

The Policy's business income and extra expense provisions are triggered only if the

---

[3] Zurich also asks the Court to consider the full text of the closure orders referenced in America's Kids' amended complaint. (Dkt. 38). While the orders are incorporated by reference into the amended complaint, the Court does not find their full contents necessary to the outcome of the present motion.

claimed loss is caused by "direct physical loss of or damage to property" at an insured location. (Dkt. 32 at ¶¶ 17–18, 24–25) (Ex. A at 159, 168). America's Kids maintains that the physical presence of COVID-19 on its premises, along with the closure orders, caused "direct physical loss of or damage to property" on its premises "by, among other things, "damaging the property, denying access to the property, preventing customers and/or employees from physically occupying the property, causing the property to be physically uninhabitable by customers and/or employees, causing its function to be nearly eliminated/destroyed, and/or causing a suspension of business operations on the premises." (Dkt. 32 at ¶ 90).

Loss of use or access alone to a premises, however, is not a *physical* loss of or damage to such property. Where, as here, a term is not defined in the policy, "it is appropriate to turn to dictionary definition" to ascertain its plain meaning. *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020) (citing New York law). The word "loss" may by itself refer to a "depriv[ation] of … a possession," *see Loss*, Oxford English Dictionary (2d ed. 1989). Similarly, the term "damage" may refer to "injury or harm that reduces value or usefulness." *Damage*, Webster's Unabridged Dictionary, (2001 ed.). In this sense, America's Kids is correct that the presence of COVID-19 and the closure orders caused loss of and damage to its properties— "while the virus is at large, the premises poses a health risk to occupants, are unusable for selling America's Kids' merchandise, and are generally untenable for commercial purposes." (Dkt. 43 at 10). This is a form of loss and/or damage. But here, these words are modified by the adjective "physical," meaning "tangible, concrete." *See Physical*, Oxford English Dictionary (3d ed. updated Mar. 2006); *see also Physical,* Black's Law Dictionary (11th ed. 2019) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). Thus, the meaning of "direct physical loss of or damage to property" in the Policy is unambiguous and

connotes actual, tangible consequences or structural change rather than figurative loss or damage through deprivation of use or value. In other words, the nature of the claimed loss must be *physical* and the loss of use or access without any tangible effect on the physical condition or location of the insured property is not "physical loss" or "physical damage."

This interpretation is bolstered when considering that business income coverages runs for the "period of restoration," which is defined in the Policy as ending upon the earlier of: (1) the date when the location has been restored to its previous "physical size, construction, configuration, location, and material specifications"; or (2) "[t]he date when a new permanent location is physically capable of resuming the level of 'operations' which existed prior to the loss or damage[.]" (Ex. A at 85). It follows that the event triggering coverage must be one that is capable of altering the covered premises' "physical size, construction, configuration, location, and material specifications" such that restoration is necessary, or one that might require an insured to open a new physical location. *See e.g., Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 177 (S.D.N.Y. 2020) ("period of restoration" ending when covered location is "'repaired, rebuilt, or replaced' suggests the occurrence of material harm that requires a physical fix"). If "physical loss or damage" encompassed a situation where, as here, an insured merely claims loss of use or access to its property without any expressed need or intention of opening a new physical location, the meaning of "period of restoration" as defined in the Policy would be rendered meaningless. *Id*; *Elite Union Installations, LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20-CV-4761 (LJL), 2021 WL 4155016, at *6 (S.D.N.Y. Sept. 13, 2021) ("period of restoration" ending when the covered property was restored to its previous "physical size, construction, configuration, and material specifications" made clear that "an inability to use the property—without more and absent some physical change to the property requiring restoration—is not sufficient to constitute "direction

physical loss or damage" and trigger coverage.")

Courts considering whether the loss of use of a business caused by COVID-19 and closure orders qualifies as "direct physical loss or damage" under New York law have uniformly determined that it does not. *See e.g., Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct. 2021) ("The words 'direct' and 'physical,' which modify the phrase "loss or damage," require a showing of actual, demonstrable physical harm of some form to the insured premises — the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage."); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, 147 N.Y.S.3d 386, 393 (N.Y. Sup. Ct. 2021) (agreeing with "New York state and federal courts construing similar policy language [which] overwhelmingly have concluded that actual physical damage to property is required to trigger coverage; loss of use alone is insufficient."); *Mangia Rest. Corp. v. Utica First Ins. Co.*, 148 N.Y.S.3d 606, 612 (N.Y. Sup. Ct. 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 71 Misc. 3d 493, 507, 142 N.Y.S.3d 724, 735 (N.Y. Sup. Ct. 2021); *Deer Mountain Inn LLC v. Union Ins. Co.*, ---F.Supp.3d---, No. 120CV0984BKSDJS, 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021) (collecting cases).

America's Kids alleges that COVID-19 is a "physical substance" that can "physically contaminate[ ] or infect[ ]" surfaces and survive on them for extended periods of time and that the virus was "physically present at or around [its] insured premises" in March 2020. (Dkt. 32 at ¶¶ 37–38, 89). But it fails to allege that the virus structurally or tangibly impacts the surfaces it inhabits, or otherwise causes any physical loss or damage to those surfaces. Although the Policy contemplates that a virus may cause "physical loss of or damage to property[,]" (*see* Ex. A at 160), America's Kids does not plausibly allege that the *corona*virus caused such loss or damage to their premises. America's Kids cites to a line of cases in which courts have found that contamination

9

by a persistent chemical or biological agent may cause direct physical loss or damage if it renders the insured property unusable. *See e.g., Schlamm Stone & Dolan, LLP v. Seneca Insurance Co.*, 800 N.Y.S.2d 356 (N.Y. App. Div. 2005) (presence of noxious particles in the carpets and surfaces of an office building near the World Trade Center after September 11, 2001, constituted "property damage" where plaintiffs alleged that "despite cleaning carpets, airshafts, furniture, and surfaces," the particles persisted and made it difficult to remain in the office for more than a few hours); *Pepsico, Inc. v. Winterthur Int'l America Ins. Co.*, 806 N.Y.S.2d 709 (N.Y. App. Div. 2005) (permanently spoiled, and now unsellable, soft drinks rendered so by faulty raw ingredients constituted "physical damage" to insured property). These cases are distinguishable, however, because America's Kids cannot plausibly allege that the presence of COVID-19 rendered its premises unusable, where the virus may readily be removed from surfaces using common household products. Accordingly, courts applying New York law have consistently found that the mere presence of COVID-19 on an insured's property does not by itself constitute physical loss or damage sufficient to trigger coverage under similar Policy language. *See e.g., Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*, --- F.Supp. 3d---, No. 1:20-CV-520, 2021 WL 2471315, at *4 (W.D.N.Y. June 16, 2021) (distinguishing *Schlamm* and *Pepsico*); *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, --- F.Supp.3d---, No. 1:20-CV-1136, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, ---F.Supp.3d---, No. 8:20-CV-701, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021) (agreeing with "numerous courts around the country—including those that have applied New York law—[that] have routinely held that the mere presence or spread of the novel coronavirus is insufficient to trigger coverage when the policy's language requires physical loss or physical damage.")

America's Kids fails to plead that the coronavirus or closure orders had any pervasive, physical effect on its insured property as required by the Policy, and consequently, fails to establish a plausible claim for coverage of its business income and extra expense losses.

### III. Civil Authority and Dependent Premises Coverage

America's Kids also claims losses under the Policy's civil authority and dependent premises coverage. Both of these provisions, however, only apply in the event of "direct physical loss of or damage to" other property. The amended complaint alleges that certain "dependent premises" such as schools "also suffered direct physical loss of or damage to property caused, as described above, by the COVID-19 pandemic" but does not otherwise explain or allege what physical loss or damage occurred at these other properties. (Dkt. 32 at ¶ 91). The only inference that can be drawn from the complaint is that these other properties were impacted by the closure orders and COVID-19 in the same manner as America's Kids' properties. As explained above, however, the mere presence of COVID-19 or loss of use or access to a property does not constitute "direct physical loss of or damage to property." For this reason, America's Kids also fails to state a plausible claim of coverage under the civil authority and dependent premises provisions of the Policy.

### IV. Microorganism Exclusion Clause

Finally, even if the term "direct physical loss of or damage" encompasses the physical presence of COVID-19 or loss of use or access to America's Kids' stores, America's Kids' claim for coverage independently fails under the Policy's microorganism exclusion clause which expressly excludes from coverage any "loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms, unless resulting from fire or lightening." (Ex. A at 97, 162, 169).

11

Notwithstanding express language indicating that this exclusion applies to business income coverage, America's Kids, claims the exclusion does not apply because business income coverage also expressly encompasses coverage for microorganism-related losses. Specifically, business income coverage includes loss "sustain[ed] due to the [n]ecessary 'suspension' of your 'operations from direct physical loss of or damage to Covered Property caused by "microorganisms" when the "microorganisms" are the result of a "covered cause of loss." (*Id*. at 160). At a passing glance, this provision may seem in conflict with the Policy's microorganism exclusion clause, but when read closely the distinction between the two is apparent and unambiguous: the Policy excludes losses *caused by* a microorganism, except when the microorganism is a *result of* a covered cause of loss. For example, an insured could recover for fungus damage to walls if that fungus is the result of a flood, but could not recover for the same damage absent a flooding event. Here, the amended complaint expressly alleges that COVID-19 is the direct cause of America's Kids' losses, rather than the result of some other covered cause of loss. (Dkt. 32 at ¶¶ 90–91). For this reason, the microorganism exclusion applies and bars America's Kids' claim for coverage.

## CONCLUSION

For the reasons stated herein, Zurich's motion to dismiss [36] and motion for judicial notice [38] are granted. America's Kids' amended complaint is dismissed without prejudice. If possible, America's Kids may amend its complaint, consistent with this Order, within 21 days of the

issuance of this Order.

_____
Virginia M. Kendall
United States District Judge

Date: September 30, 2021